1   Peter J. Woo (SBN 306083)
    Peter.Woo@jacksonlewis.com
2   Heather B. Dillion (SBN 292156)
    Heather.Dillion@jacksonlewis.com
3   JACKSON LEWIS P.C.
    200 Spectrum Center Drive, Suite 500
4   Irvine, CA 92618
    Telephone: (949) 885-1360
5   Facsimile: (949) 885-1380
6
    Attorneys for Defendants IMCD US, LLC
7   and E.T. HORN COMPANY (erroneously
    sued as a purported separate entity)
8

9                 UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12  BLAINE PATRIQUIN AND NICOLLE      CASE NO.  8:21-cv-01127
    PERALES, individually, and on behalf of
13  all others similarly situated,      **NOTICE OF REMOVAL TO THE
                                        UNITED STATES DISTRICT COURT
14                                      FOR THE CENTRAL DISTRICT OF
                    Plaintiffs,         CALIFORNIA PURSUANT TO 28
15                                      U.S.C. §§ 1332, 1367, 1441, 1446, AND
            vs.                         1453**
16
    IMCD US, LLC; E.T. HORN COMPANY     [Filed concurrently with Declarations of
17  and DOES 1 through 50, inclusive,   Heather B. Dillion and Thomas Van
                                        Valkenburgh; Civil Case Cover Sheet;
18                                      Corporate Disclosure Statement and Notice
                    Defendants.         of Interested Parties]
19
20                                      State Complaint Filed:  April 23, 2021
21

22      **TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT**

23  **COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND PLAINTIFFS**

24  **BLAINE PATRIQUIN AND NICOLLE PERALES:**

25      PLEASE TAKE NOTICE that IMCD US, LLC and E.T. HORN COMPANY

26  (erroneously sued as a purported separate entity) (collectively referred to as

27  "Defendants") hereby invoke this Court's jurisdiction under the provisions of 28 U.S.C.

28

---

Case No.  8:21-cv-01127          1          NOTICE OF REMOVAL TO THE
                                            U.S. DISTRICT COURT FOR THE
                                            CENTRAL DISTRICT OF CALIFORNIA

§§ 1332, 1367, 1441(a)-(b), 1446, and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Orange.

1.    On April 23, 2021, Plaintiffs BLAINE PATRIQUIN AND NICOLLE PERALES ("Plaintiffs") filed a civil Class Action Complaint for Damages against Defendants in the Superior Court of the State of California in and for the County of Orange, entitled *Blaine Patriquin and Nicolle Perales, individually and on behalf of all other similarly situated v. IMCD US, LLC; E.T. Horn Company and DOES 1 through 50, inclusive*, Case No. 30-2021-01197131-CU-OE-CXC, which sets forth the following causes of action:  (1) Failure to Pay All Wages Earned; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Compliant Meal Periods and Rest Breaks; (4) Failure to Provide Accurate Wage Statements; (5) Failure to Timely Pay Wages to Terminated Employees; and (6) and Violation of The Unfair Competition Law (Cal. Bus. & Prof. Code §§17200, *et seq*.).  *See* Declaration of Heather B. Dillion ("Dillion Decl.") at ¶ 2, Ex. A.

2.    Defendants were served with a copy of the Summons, Complaint and related court documents on May 27, 2021. *Id.*

3.    On June 28, 2021, Defendants filed the Answer to the Complaint in state court, asserting a general denial as permitted by California Code of Civil Procedure section 431.30(d) and various affirmative defenses.  A copy of Defendants' Answer is attached to the Dillion Decl. as Exhibit B.

## **TIMELINESS OF REMOVAL**

4.    This removal has been filed within thirty (30) days after Defendants were served with a copy of Plaintiff's Summons and Complaint on May 27, 2021.  No previous Notice of Removal has been filed or made with this Court for the relief sought. Therefore, this Notice of Removal is filed within the time period provided by 28 U.S.C. § 1446(b) because it is being filed within the statutory deadline.

/ / /

/ / /

## NOTICE TO ALL PARTIES AND STATE COURT

5.     In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal along with all supporting pleadings will be promptly served on Plaintiff, and also filed with the Clerk of the Orange County Superior Court. All procedural requirements for notice under 28 U.S.C. § 1446, therefore, will be followed and satisfied.

## JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

6.     Section 4 of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2) has been amended to read, in relevant part: The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

7.     In addition, CAFA provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(5).

8.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d). It is a civil action filed as a putative class action in which Plaintiff is a citizen of a state different from Defendant, the Complaint's allegations place more than $5,000,000 in controversy exclusive of interest and costs, and the putative class numbers more than 100 members. *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, Defendants are not a State, State official, or other governmental entity.

## CAFA's Diversity Requirement Is Satisfied

9.     CAFA's diversity requirement is satisfied, in relevant part, when at least one member of a class of plaintiffs is a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2); *see also Snyder v. Harris*, 394 U.S. 332, 340, 89 S. Ct. 1053, 1059 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court

even though all other members of the class are citizens of the same State as the defendant and have nothing to fear from trying the lawsuit in the courts of their own State."); *Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 777 (8th Cir. 2014) ("the citizenship of 'the entire plaintiff class' has no bearing on the jurisdictional inquiry. Diversity jurisdiction in a class action depends solely on the citizenship of the named parties."); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 162 (2d Cir. 1987) ("It is hornbook law, based on 66 years of Supreme Court precedent, that complete diversity is required only between the named plaintiffs and the named defendants in a federal class action.").

10.    Citizenship of the parties in this Action is determined by their citizenship status at the Action's commencement.  *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

11.    For diversity jurisdiction purposes, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *see also Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of their citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile). Furthermore, a person's intention to remain may be established by their place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.,* 2017 U.S.Dist.LEXIS 90131, at *10 (C.D.Cal. June 12, 2017). ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

/ / /

/ / /

12.    Plaintiffs allege that they were both employees of IMCD's "Orange County" location, and that they were employed by IMCD "in California." *See* Complaint ¶¶ 18-19; 23.  In addition, IMCD is informed and believes Plaintiffs are residents and citizens of the State of California.  Based on a review of their personnel files, Plaintiffs' residence is believed to be Placentia, California and Rancho Cucamonga, California.  *See* Declaration of Thomas Van Valkenburgh in Support of Defendants' Notice of Removal ("Van Valkenburgh Decl."), ¶ 5.  Accordingly, Plaintiffs are citizens of the State of California within the meaning of 28 U.S.C. § 1332(a). *See, e.g., Zavala v. Deutsche Bank Tr. Co. Ams.*, 2013 U.S. Dist. LEXIS 96719, at *9 (N.D. Cal. July 10, 2013) ("A party's residence is 'prima facie' evidence of domicile.  In the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes.") (internal citations omitted).

13.    When two entities merge before suit is filed, the citizenship of the successor is determinative for purposes of diversity jurisdiction. *See Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 672 (9th Cir. 1986) (citing *Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp.*, 523 F.2d 543, 548-49 (7th Cir. 1975)).  Defendant E.T. Horn Company was purchased by Defendant IMCD on or around November 1, 2019, well before the filing of the complaint in this action. *See* Agreement and Plan of Merger, attached as Exhibit B to Van Valkenburgh Decl.  The surviving company is Defendant IMCD.  *Id.*  As such, the only citizenship that is relevant here is IMCD's.

14.    A limited liability company is deemed to have the citizenship of every one of its members. *See Cosgrove v. Bartoletta*, 150 F.3d 729 (7th Cir. 1998).  A corporation is a citizen of any state in which it is incorporated and of the state in which it has its principal place of business. 28 U.S.C. § 1332(c).

15.    At the time the Complaint in this action was filed on April 23, 2021, and currently, IMCD has been a Limited Liability Company organized under the laws of the state of Delaware.  IMCD's sole member is IMCD Holdings US, Inc. ("IMCD Inc.").  Van Valkenburgh Decl., ¶ 4.  IMCD Inc., both at the time this action was commenced

and at the time it is being removed to federal court, is a citizen of Delaware within the meaning of Section 1332(c)(1), because it has been at all such times a corporation formed under the laws of Delaware, with its principal place of business and corporate headquarters located in Jersey City, New Jersey, where it conducts a predominance of its corporate business activities. *Id.* at ¶ 4. Moreover, IMCD Inc.'s high-level corporate officers are located at its headquarters in Jersey City, New Jersey. *Id.*; *Hertz Corp. v. Friend*, 599 U.S. 77, 130 S.Ct. 1181 (2010).

16.     IMCD Inc.'s Board of Directors typically meets at its headquarters in Jersey City, New Jersey. Applying the "nerve center" test, New Jersey is the state where IMCD's primary executive, administrative, financial and management functions are conducted and where the high-level officers direct, control, and coordinate the corporation's activities — *i.e.*, the principal place of business of IMCD. *Id.*; *see also Hertz Corp.,* 130 S. Ct. at 1192 (holding that a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters--provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).").

17.     Because at least one member of the class of plaintiffs is a citizen of a state (*i.e.* California) different from Defendant (*i.e.* New Jersey), minimal diversity exists here. *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

18.     The presence of Doe defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

/ / /

## CAFA's Numerosity Requirement Is Satisfied

19.     CAFA also requires that "the number of members of all proposed plaintiff classes in the aggregate" exceeds 100, a standard satisfied by the Complaint here. *See* 28 U.S.C. § 1332(d)(5).

20.     Here, Plaintiffs allege that "the Class is estimated to be greater than 50 individuals." *See* Complaint, ¶ 40.   Based upon IMCD's records, the putative class includes approximately 118 current and former non-exempt employees who were employed by Defendants in California between April 23, 2017 and June 15, 2021.  *See* Van Valkenburgh Decl. at ¶ 7.   As such, this Court properly has jurisdiction over this matter, as the class proposed by Plaintiffs contain in excess of 100 members.

## CAFA'S Amount in Controversy Requirement is Satisfied

21.     CAFA, 28 U.S.C. Section 1332(d), authorizes the removal of class action cases in which, among other factors mentioned above, the amount in controversy for all Class Members exceeds $5,000,000. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547, 554 (2014), the United States Supreme Court held that where a plaintiff's complaint is silent as to whether the amount in controversy is less than CAFA's jurisdictional threshold of $5,000,000, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."

22.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of their claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002), *citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability") and *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated").   The argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied.

*Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 n.1 (9th Cir. 2002), *citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969). Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).

23.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the amount in controversy requirement under CAFA should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly . . . .").

24.    But even were this insufficient to establish jurisdiction under CAFA (it is not), Plaintiffs' Complaint still meets CAFA's amount in controversy requirement.  If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise.  *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid

removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

25.     In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that when the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o 'antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554. On the contrary, courts are required to interpret CAFA's

provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

26.     Without admitting that Plaintiffs could recover or are entitled to any damages individually, let alone on a class wide basis, IMCD has a good-faith belief that Plaintiffs' sought-after relief places the amount in controversy in this action in excess of $5,000,000, exclusive of interest and costs.

27.     The Complaint herein seeks relief on behalf of a class defined as "[a]ll individuals (a) who are currently or formerly employed by Defendants and performed worked in California as non-exempt employees . . ." *See* Complaint ¶ 36.

28.     Plaintiffs' Complaint in no way limits the potential exposure as to any cause of action for any alleged Class Member. For example, Plaintiff's Complaint does not include any qualifying or limiting terms related to each alleged violation by Defendants, such as "sometimes," "at times," *et cetera. See generally*, Complaint. This gives rise to a reasonable assumption by Defendants that Plaintiffs have claimed that every alleged violation occurred during every shift worked by every putative Class Member.

29.     Plaintiffs allege that "Defendants failed to pay Plaintiffs and Class members for all hours worked as they worked in excess of 8 hours per day (and regularly more than 10 hours per day), but no overtime compensation was paid to them." Complaint, ¶ 8. Plaintiffs also allege Defendants' willfully failed to pay certain class members their "compensation for all hours worked . . ." and that certain class members are now due waiting time penalties. Complaint, ¶¶ 104-108.

30.     Based on an analysis performed on the rate of pay across the purported Class Members, the average rate of pay is $21.15 per hour (Van Valkenburgh Decl. at ¶ 8), and taking as true for the purposes of this removal Plaintiffs' allegations that Plaintiffs – and the putative Class Members – regularly worked at least 8 hours in a workday, 40 hours per week, and even only assuming that 50% of the terminated employees are owed waiting time penalties (*i.e.* only 50% of the terminated employees are owed any amount of unpaid wages), the potential exposure for a claim under Labor Code section 203 equals

NOTICE OF REMOVAL TO THE
U.S. DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

**$299,484.00**.  *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

31.     Further, Plaintiffs allege that they and the putative Class Members were not "properly provided with" compliant meal periods.  Complaint, ¶ 64.  Specifically, Plaintiffs allege that "Defendants failed to consistently allow and provide the meal periods required by applicable California law" and that "Plaintiffs and the class members of the Class regularly worked a full day and did not receive proper meal periods . . ."  *Id.* at ¶ 81.  Plaintiffs further allege that "Defendants failed to provide Plaintiffs and the members of the Class the opportunity to take adequate meal periods as required by law or compensate them at the one hour of 'premium wage' at the employee's regular rate of pay for each day that a meal period was not authorized, permitted or otherwise compliant with California law."  *Id.* at ¶ 82.  Moreover, Plaintiffs allege that "Defendants failed to authorize and permit Plaintiffs and the members of the Class to take adequate rest periods as required by law or compensate them at one hour of 'premium wage' . . ."  *Id.*at ¶ 87.

32.     Even assuming that each putative Class Member only missed three meal periods and three rest breaks every week (*see Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven"), this equals potential exposure of **$2,994,840.00** for these causes of action.

33.     Additionally, Plaintiffs' Complaint includes a cause of action for an unspecified amount of unpaid overtime wages. *See* Complaint, ¶¶ 62-71 ("Plaintiffs and the members of the Class were entitled to be paid overtime compensation for all overtime hours worked.  According to the Complaint, Plaintiffs, and members of the Class, were

regularly and consistently required to work overtime during the Class Period, but were not paid for all overtime hours worked and were not paid at the correct overtime rate of pay."). Applying the reasonable assumption of three hours of unpaid overtime per week, per putative Class Member, this equals potential exposure of **$2,246,130.00**.

34.     Therefore, the amount in controversy requirement is met and exceeded based on the causes of action analyzed herein ($2,944,840 + $299,484 + $2,246,130), even without taking into account Plaintiffs' allegation that they and the putative Class Members are entitled to recover from Defendants the greater of all actual damages caused by Defendants' failure to comply with Labor Code § 226(a) or statutory damages in an amount not exceeding four thousand dollars ($4,000) per employee (which, assuming a 100% violation would be $472,000). *See* Complaint, ¶ 97.

35.     Additionally, Plaintiffs Complaint seeks an unspecified amount of attorneys' fees in connection with their Complaint. *See, e.g.,* Complaint, Prayer for Relief, ¶ 15. Such fees may be considered to determine jurisdictional amount, *see Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982), including those fees that are recoverable by statute, *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998). Indeed, the Ninth Circuit has held that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas v. Michael Kors (USA) Inc.*, 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

36.     "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five

percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at \*23 (N.D. Cal. Jan. 2, 2014); *see also Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at \*16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at \*51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Herrera v. Carmax Auto Superstores Cal., LLC*, 2014 U.S. Dist. LEXIS 188729, at \*12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available.").

37.    Accordingly, even using reasonable assumptions for each of the causes of action in Plaintiffs Complaint, and even without taking into account (1) the potential section 226 penalties and (2) the potential attorneys' fees and costs, the $5,000,000 amount in controversy requirement is met.

## TRADITIONAL DIVERISTY JURISDICTION PURSUANT TO 28 U.S.C. § 1332

38.    Separately and independently, the Court has subject matter jurisdiction over this case on the basis of 28 U.S.C §§ 1332 and 1441, because this is a civil action between citizens of different States, in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interests.

## Traditional Diversity Is Satisfied

39.    As noted above, Plaintiffs are both citizens of California.  Valkenburgh Decl., ¶¶ 9-10.  As also previously discussed, IMCD is an LLC, and its sole member is IMCD Holdings Inc., which is incorporated in Delaware, and headquartered in New Jersey, and is therefore a citizen of Delaware and New Jersey. *Id.*, ¶ 4.

/ / /

/ / /

40.     Therefore, this is an action between California citizens, on the one hand, and a citizen of Delaware and/or New Jersey, on the other hand, so as to vest this Court with traditional diversity jurisdiction.

**The Amount in Controversy Requirement for Traditional Diversity Jurisdiction is Satisfied**

41.     This action also meets the amount in controversy requirement for removal based on traditional diversity jurisdiction.  Specifically, 28 U.S.C. § 1332(a) authorizes the removal of cases in which, among other factors addressed above, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Where the plaintiff's complaint is silent to the amount of damages claimed, the removing defendant need only establish that it is more probable than not that the plaintiff's claim exceeds the jurisdictional minimum.  *Guglielmino v. McKee Foods, Corp.,* 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.,* 95 F.3d 856, 860-61 (9th Cir. 1996).  That is, a plaintiff's failure to specify in the complaint the total amount of damages she seeks does not deprive this Court of jurisdiction.  *See, e.g., White v. J.C. Penney Life Ins. Co.*, 861 F.Supp. 25, 26 (S.D. W.Va. 1994) (a defendant may remove a suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any plaintiff could avoid removal simply by declining . . . to place a specific dollar value upon its claim.").

42.     In assessing diversity jurisdiction in a multi-plaintiff action, if one plaintiff's claims "satisfy the amount-in-controversy requirement, but the claims of other plaintiffs do not, . . . § 1367(a) confers supplemental jurisdiction over all claims, including those that do not independently satisfy the amount-in-controversy requirement, if the claims are part of the same Article III case or controversy."  *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 558-59, 125 S. Ct. 2611, 2620 (2005); *see also Geerlof v. C&S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS 51428, at *20 (E.D. Cal. Apr. 11, 2014) ("Should at least one Plaintiff meet the $75,000 requirement, the Court may exercise its supplemental jurisdiction over the claims of the remaining Plaintiffs."); *Alcatel Lucent*

*United States, Inc. v. Dugdale Communs., Inc.*, 2010 U.S. Dist. LEXIS 22226, at *14-15 (C.D. Cal. Mar. 5, 2010) ("In an action involving multiple plaintiffs, a federal court may exercise supplemental jurisdiction over a co-plaintiff's claims that fail to meet the jurisdictional amount in controversy if (1) at least one plaintiff satisfies the amount in controversy, (2) the other elements of diversity jurisdiction are satisfied, and (3) the plaintiff's claims are part of the same 'case or controversy.'"); *Chess v. CF Arcis IX LLC,* No. 20-cv-01625-CRB, 2020 U.S. Dist. LEXIS 129652, *15 (N.D. Cal. July 22, 2020) (stating that the court need not reach the issue of CAFA jurisdiction because traditional diversity jurisdiction was established, and that the Court can exercise supplemental jurisdiction over other claims in the complaint because they arise from the same transaction or occurrence).

43.    Here, the jurisdictional amount is satisfied because each of Plaintiff Blaine Patriquin's and Nicolle Perales' claims exceed the sum or value of $75,000, and because all of Plaintiffs' claims are part of the same Article III case or controversy. *See Alcatel Lucent United States, Inc. v. Dugdale Communs., Inc.*, 2010 U.S. Dist. LEXIS 22226, at *16 (C.D. Cal. Mar. 5, 2010) ("In order to determine whether the claims are part of the same case or controversy, the Court will examine whether they involve a 'common nucleus of operative fact.'"); *see also* Complaint ¶ 40(b) ("Plaintiffs' claims (or defenses, if any) are typical of all Class members' as demonstrated herein.").

44.    Plaintiffs allege that they "regularly worked in excess of 8 hours per day and/or 40 hours per week and were not paid all wages, or wages at the proper rate, for this time . . ." Complaint, ¶ 8.  Plaintiffs do not allege the precise number of overtime hours worked and further do not allege that rate at which they believe payment was due. *Id.; see also Lucas v. Michael Kors (USA) Inc.,* 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").  Instead, Plaintiffs only allege that they, "and the members of the Class, were regularly and consistently required to work overtime during the Class Period, but were not paid for all overtime hours worked and

were not paid the correct overtime rate of pay." Complaint, ¶ 68. At the time of his separation from IMCD, Plaintiff Patriquin made $45.46 per hour. Van Valkenburgh Decl., ¶ 9. At the time of her separation from IMCD, Plaintiff Nicolle Perales made approximately $43.08 per hour. *Id.* at ¶ 10. Assuming solely for the purpose of removal, that each Plaintiff worked five hours of overtime per week during the applicable class period for which they were allegedly not compensated, the amount placed in controversy with respect to Patriquin's claim for failure to pay overtime wages is at least **$68,190.00** (*i.e.* $45.46/hour x 1.5 [$68.19/hour] x 5 hours x 200 weeks). The amount placed in controversy with respect to Perales' claim for failure to pay overtime wages is at least **$64,620.00** (*i.e.,* $43.08/hour x 1.5 [$64.62/hour] x 5 hours x 200 weeks). Thus, the amount in controversy requirement is nearly established on each of the Plaintiffs' allegations of IMCD's failure to pay overtime wages alone.

45. As discussed, Plaintiffs also allege that Defendants failed to pay them all wages due upon their termination. *See* Complaint, ¶¶ 104-108. Thus, based on Plaintiffs' allegations that they regularly worked at least 8 hours in a workday (though they also allege the regularly worked more than 10 hours), the penalties for a claim under Labor Code section 203 for Patriquin would equal **$10,910.40** ($45.46/hour x 8 hours x 30 days), for Perales it would equal **$10,339.20** ($43.08/hour x 8 hours x 30 days).

46. As previously discussed as well, Plaintiffs also allege that "[t]hroughout the Class Period, Defendants failed to consistently allow and provide the meal periods required by applicable California law . . . Plaintiffs and the members of the Class regularly worked a full day and did not receive proper meal periods . . . Instead, Plaintiffs and Class members were frequently required and/or encouraged to shorten or miss their meal periods, were prevented from taking them until well past the 5th hour, or had their meal periods interrupted or limited. Defendants failed to provide Plaintiff and the members of the Class the opportunity to take adequate meal periods as required by law or compensate them at one hour of 'premium wage' at the employee's regular rate of pay for each day that a meal period was not authorized, permitted, or otherwise compliant

with California law."  Complaint, ¶¶ 81-84.  Plaintiffs further allege that they "regularly worked shifts in excess of 4 hours without being permitted the opportunity to take a paid rest period of at least 10-minutes, uninterrupted, relieved of all job duties; worked more than 6 hours at a time without being allowed a second paid 10-minute, uninterrupted, rest period, relieved of all job duties; worked shifts in excess of 10 hours without being allowed a third paid 10-minute, uninterrupted, rest period, relieved of all job duties; and/or worked in excess of 14 hours without being allowed a third paid 10-minute, uninterrupted, rest period, relieved of all job duties."  *Id.* at ¶ 86.  Moreover, Plaintiffs allege Defendants failed to "permit Plaintiffs and the members of the Class to take adequate rest periods as required by law or compensate them at one hour of 'premium wage' at the employee's regular rate of pay for each day that a rest period was not authorized, permitted, or otherwise complaint with California law."  *Id.* at ¶ 87. Thus, based on Plaintiffs' allegations that they regularly were not provided a meal period and regularly were not provided a rest period, the amount in controversy with respect to Patriquin's missed meal and rest break allegations equates, at least **$54,552.00** ($45.46/hour x 6 (assuming 3 missed meal periods and 3 missed rest periods per week) x 200 weeks), with respect to Perales' missed meal and rest break allegations equates, at least **$51,696.00** ($43.08/hour x 6 (assuming 3 missed meal periods and 3 missed rest periods per week) x 200 weeks).

47.     Moreover, as discussed, Plaintiffs are also seeking attorneys' fees pursuant to Code of Civil Procedure § 1021.5, as well as Labor Code §§ 218.5, 226, and 1194. Complaint, Prayer ¶ 15; *see also Serrano v. Unruh,* 32 Cal.3d 621, 639 (Cal. 1982) ("We hold therefore that, absent circumstances rendering the award unjust, fees recoverable under section 1021.5 ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim.") *Velasquez v. Khan*, 2005 U.S. Dist. LEXIS 28956, at *11 (E.D. Cal. Sep. 28, 2005) (district court awarding reasonable attorney's fees, pursuant to section 1021.5, in the amount of $192,555.00); *Castro v. Chang Sup Han (In re Chang Sup Han),* 2015 Bankr. LEXIS 3210, at *32

1
2
3

(Bankr. C.D. Cal. Sep. 22, 2015) (awarding professional fees and costs of $138,866.50 for services rendered and $9,377.42 for costs, for a total of $148,243.92, pursuant to California Labor Code § 1194(a) and California Code of Civil Procedure § 1021.5).

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

48.     District courts in the Ninth Circuit have acknowledged "attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case." *Lippold v. Godiva Chocolatier, Inc.*, 2010 U.S. Dist. LEXIS 47144, at *11 (N.D. Cal. Apr. 15, 2010); *see also Cagle v. C&S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS 21571, at *30 (E.D. Cal. Feb. 18, 2014).   Here, Plaintiffs are represented by Bisnar Chase, LLP. *See* Complaint.   Specifically, Plaintiffs are represented by Brian D. Chase, Jerusalem F. Beligan, and Ian M. Silvers.   *See,* Complaint.   Mr. Chase was admitted to the California bar in 1993 (*see* http://members.calbar.ca.gov/fal/Licensee/Detail/164109), Mr. Beligan was admitted to the California bar in 2000 (http://members.calbar.ca.gov/fal/Licensee/Detail/211258), and Mr. Silvers was admitted to the California bar in 2006 (http://members.calbar.ca.gov/fal/Licensee/Detail/247416). Based on Plaintiffs' counsel's experience, it is not unreasonable to expect a blended billing rate of at least $550.   Dillion Decl., ¶ 4; *see also Velazquez v. Costco Wholesale Corp.*, 2013 U.S. Dist. LEXIS 202124, at *7 (C.D. Cal. Mar. 11, 2013) (finding an hourly rate of $600 to be "reasonable" in a wage and hour case); *Anderson v. Nextel Retail Stores, LLC*, 2010 U.S. Dist. LEXIS 71598, at *24 (C.D. Cal. June 30, 2010) (noting that hourly billing rates ranging from $450 to $515 for associates and $600 to $750 for partners are reasonable in a "straightforward wage-and-hour litigation").   Thus, at a blended rate of $550/hour, attorneys' fees would reach **$55,000** after just 100 billable hours.   Moreover, Plaintiff's counsel has, in a similar action, requested the court to award counsel $245,000 in attorneys' fees.   *See* Dillion Decl., ¶ 4; *see also* Notion of Motion and Motion for an Order Granting Final Approval of Class Settlement and an Award of Attorneys' Fees and Costs to Class Counsel, attached as Exhibit C to Dillion Decl. (wherein Plaintiffs' counsel requested $245,000 in attorneys' fees).

28

49.     In short, the amount in controversy requirement for traditional diversity jurisdiction is easily satisfied.  Even without considering several of Plaintiffs' claims, Patriquin's individual claims place in controversy **$188,652.40** ($68,190.00 [alleged unpaid overtime] + $10,910.40 [alleged Labor Code § 203 penalties] + $54,552.00 [alleged missed meal and rest periods], + $55,000.00 [attorneys' fees]), and Perales' individual claims place in controversy **$126,655.20** ($64,620.00 [alleged unpaid overtime] + $10,339.20 [alleged Labor Code § 203 penalties] + $51,696.00 [alleged missed meal and rest periods], + $55,000 [attorneys' fees]) both of which, individually, are far in excess of the $75,000 requirement.

50.     Accordingly, pursuant to both § 1332(d)(2) (diversity jurisdiction pursuant to CAFA) and § 1332(a) (traditional diversity jurisdiction), the amount in controversy requirement is satisfied here.

## **VENUE IS PROPER**

51.     Venue of this action lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. sections 1441(a) and 1391(c), because this is the judicial district in which Plaintiffs allege the action arose, and where, based on information and belief, Plaintiffs reside.

## **NO ADMISSION**

52.     IMCD does not concede in any way that the allegations in the Complaint or any other pleading discussed above are accurate, nor do they concede that Plaintiffs are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, punitive damages, attorneys' fees, or any other relief.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    WHEREFORE, IMCD removes the above-entitled action now pending in the
2    Superior Court of the State of California for the County of Orange to this Court.

3

4    DATED: June 28, 2021                    JACKSON LEWIS P.C.

5                                            /s/ Heather B. Dillion
6                                      By: _____
7                                            Peter J. Woo
                                             Heather B. Dillion
8                                            Attorneys for Defendants
                                             IMCD US, LLC and E.T. HORN
9                                            COMPANY (erroneously sued as a
                                             purported separate entity)
10

11   4836-9654-3984, v. 1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28